IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

MATTHEW J. SHORTT,                    )
                                      )
                Plaintiff,            )
V.                                    )          Civil Action No. 1:11CV144
                                      )
IMMIGRATION REFORM LAW INSTITUTE,     )
ET AL.,                               )
                Defendants.           )
                                      )

MEMORANDUM OPINION

This case is before the Court on the Court on Defendants Immigration Reform Law Institute ("IRLI") and Sharma Hammond ("Hammond") (collectively, "Defendants"), Motion for Summary Judgment.

Plaintiff Matthew Shortt filed this action against Defendants IRLI and Hammond, alleging legal malpractice in connection with their legal representation of him concerning claims arising from his termination from Dick Clark's American Bandstand Grill (hereinafter "DCAB") on June 20, 2007. Plaintiff retained the Defendants in September 2007 to file a charge with the Department of Justice Office of Special Council ("OSC"), and, later, to file a complaint with the Executive Office for Immigration Review, Office of the Chief Administrative Hearing Officer ("OCAHO"), for immigration-based employment discrimination in violation of 8 U.S.C. § 1324b

("Immigration Reform and Control Act" or "IRCA") ("the OCAHO Case").
Defendants pursued the OCAHO Case before Administrative Law Judge
("ALJ") Ellen K. Thomas, and, following an extensive discovery
period, ALJ Thomas entered summary decision in DCAB's favor.

Defendants withdrew as counsel and Plaintiff thereafter
unsuccessfully appealed the ALJ's decision *pro se*. Shortt v. Dick
Clark's AB Theatre, LLC, No. 09-3442, 2010 WL 1740802, at *1 (May
3, 2010). Plaintiff also filed a *pro se* lawsuit against DCAB in
Missouri federal court based upon the identical facts and
circumstances underpinning the OCAHO Case. DCAB prevailed in that
lawsuit. Plaintiff's *pro se* appeal in that case was unsuccessful.
Thus, the judgments against Plaintiff in those cases are now final.

Plaintiff filed this malpractice action in a Virginia state
court, and the Defendants removed the case to this Court on the basis
of diversity of citizenship. There are no material facts in dispute
and this case is ripe for summary judgment.

When the pleadings and evidence of record establish no genuine
issue of material fact exists and the moving party is entitled to
judgment as a matter of law, summary judgment is properly granted.
FED. R. CIV. P. 56(a). Only disputes concerning facts that might
affect the outcome of the case under governing law are material;
genuine disputes of fact exist if the evidence, when viewed "in the
light most favorable to the non-moving party is such that a reasonable

2

jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, wholly speculative assertions are insufficient. Atlantic States Constr. Co. v. Robert E. Lee & Co., 406 F.2d 827, 828 (4th Cir. 1969).

A properly supported summary judgment motion does not permit the non-moving party to "rest upon the mere allegations of his pleadings;" rather, he is required to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Indeed:

> The plan language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). The non-moving party carries this burden by showing that the evidence is sufficient to support a resolution of the factual issue in his favor, and must do "more than simply show . . . some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. "[A] complete failure of proof concerning an essential element of the [plaintiff's] case

3

necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.

Because the court's subject matter jurisdiction is premised on diversity of citizenship, the Court must first address which state's law governs Plaintiff's claims. In this regard, the Court applies the choice-of-law rules of Virginia, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22, 85 L. Ed. 1477 (1941); Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007). "Under Virginia law, claims for legal malpractice and breach of contract by an attorney are one and the same; a claim for legal malpractice, although sounding in tort, is considered a claim for breach of contract." Umphreyville v. Gittins, 662 F. Supp. 2d 501, 508 (W.D. Va. 2009), aff'd mem., 366 Fed. Appx. 460 (4th Cir.), cert. denied, 131 S. Ct. 477 (2010); Cox v. Geary, 271 Va. 141, 624 S.E.2d 16, 22 (2006). Questions concerning the adequacy of performance of a contractual duty are governed by the laws of the place of performance. Equitable Trust Co. v. Bratwursthaus Mgmt. Corp., 514 F.2d 565, 567 (4th Cir. 1975). Thus, because Plaintiff's claims are based on Defendants' alleged negligent, inadequate performance of a contractual duty, the law of

4

the place of performance applies.

In this case, the Defendants' legal services were to be performed in both the District of Columbia, the location of IRLI's principal office, and the Commonwealth of Virginia, where the underlying legal proceedings were conducted. Consequently, the Court could consider the Defendants' summary judgment motion under either Virginia law or District of Columbia law. Nonetheless, the relevant legal principles are fundamentally the same in both jurisdictions, and, therefore, the instant motion should be considered under the principles of Virginia law.

A cause of action for legal malpractice in Virginia has three separate elements that the plaintiff must plead and prove: (1) the existence of an attorney-client relationship creating a duty; (2) a breach of that duty by the attorney; and (3) damages that were proximately caused by the attorney's breach of duty. Williams v. Joynes, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009); Campbell v. Bettius, 244 Va. 347, 352, 421 S.E.2d 433, 436 (1992). Each of these elements is necessary to establish a *prima facie* case of legal malpractice, and mere allegations of negligence or breach of duty are insufficient. Gregory v. Hawkins, 251 Va. 471, 475, 468 S.E.2d 891, 893 (1996).

"Unless a malpractice case turns upon matters within the common knowledge of laymen, expert testimony is required to establish the

5

appropriate professional standard, to establish a deviation from that standard, and to establish that such a deviation was the proximate cause of the claimed damages." Seaward Int'l, Inc. v. Price Waterhouse, 239 Va. 585, 391 S.E.2d 283, 287 (1990) (internal citations omitted); see also Umphreyville, 662 F. Supp. 2d at 512 (observing that expert testimony is required in most legal malpractice cases to establish the standard of care because only an attorney can competently testify as to whether the defendant comported to the prevailing legal standard); Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 457 S.E.2d 28, 33 (1995); Beverly Enterprises-Virginia v. Nichols, 247 Va. 264, 441 S.E.2d 1, 3 (1994). Without expert assistance, lay juries cannot understand most litigation issues, legal practices, or the range of considerations that influence the manner in which an attorney should act or advise. See generally Umphreyville, 662 F. Supp. 2d at 512; Star Broadcasting, Inc. v. Reed Smith, LLP, 2009 WL 482833 (E.D. Va. 2009), aff'd, 2010 WL 1474359 (4th Cir. 2010). Thus, in the overwhelming majority of cases, standard of care, breach, and causation issues require expert testimony. Ripper v. Bain, 253 Va. 197, 482 S.E.2d 832, 83536 (1997).

In terms of causation, a legal malpractice action typically involves a "case-within-a case," in which the plaintiff must present the evidence that would have been presented in the underlying action.

6

Whitley v. Chamouris, 265 Va. 9, 11, 574 S.E.2d 251, 252-53 (2003). There must be sufficient evidence of a breach of duty, causation, and damages to convince the fact-finder that, in the absence of the attorney's alleged negligence, the plaintiff would have prevailed in the underlying litigation. Id.; Campbell, 244 Va. at 352, 421 S.E.2d at 436.

The malpractice allegations in this case can be divided into two distinct areas. First, Plaintiff alleges errors in the preparation and prosecution his OCAHO immigration-related discrimination claims. Second, Plaintiff asserts he received negligent advice and counsel regarding the scope of the Defendants' representation; they failed to inform him regarding procedural prerequisites to the prosecution of employment discrimination claims under Title VII; and they failed to inform him of the potential negative consequences of an adverse ruling in the OCAHO Case to other potential claims arising from the same set of operative facts.

Plaintiff's allegations of negligence in connection with the OCAHO Case involve matters of litigation preparation and strategy – the prosecution of discovery, the selection and identification of witnesses, whether to interview witnesses prior to trial, the participation in discovery depositions of third-party witnesses on written questions, and written and oral advocacy in connection with submissions and exhibits to an adjudicatory tribunal – that require

7

expert testimony. See Floyd v. Hefner, 556 F. Supp. 2d 617, 643 (S.D. Tex. 2008) (noting that expert testimony is required when an attorney's preparation, management and presentation of litigation involves matters of judgment and tactical choices).

Indeed, in order to adjudicate the liability issues in this case, the fact-finder will be required to assess the Defendants' reasoned and informed attorney judgment and performance in the context of the rules and procedures of an administrative tribunal to adjudicate arcane and complex immigration-related employment discrimination claims under a specialized federal statute. These matters are clearly beyond the scope of a layperson's common knowledge and understanding, and expert testimony is required to prove the applicable standard of care and any alleged deviation from the standard.

In this case, Plaintiff has not presented any expert testimony to establish the applicable standard of care or that the Defendants breached the standard in their preparation and prosecution of the OCAHO Case. The absence of expert testimony to establish the standard of care or a breach thereof in that regard is fatal to Plaintiff's claims, and, as a result, the Defendants are entitled to judgment as a matter of law.

Plaintiff also asserts that the Defendants were required to advise him regarding any other, non-OCAHO employment discrimination

8

claims against DCAB, the procedural prerequisites attendant to such claims (i.e., the requirement of exhaustion of administrative remedies), and any potential negative consequences of an adverse result in the OCAHO Case to these other claims (i.e., res judicata or collateral estoppel).

The issue of whether the Defendants had an affirmative duty to provide the Plaintiff with advice concerning other potential civil claims under the circumstances is not a matter that is within the common knowledge of a layperson, and thus must be established through expert testimony. Plaintiff's failure to present any expert testimony in this regard is fatal to this aspect of his claim, and the Defendants are entitled to judgment as a matter of law.

A legal malpractice action fails as a matter of law if the attorney's alleged negligence or breach of contract causes no cognizable damage to the client. See Gregory v. Hawkins, supra, 251 Va. at 475, 468 S.E.2d at 893; Campbell v. Bettius, supra, 244 Va. at 352, 421 S.E.2d at 436; Duvall, Blackburn, Hale & Downey v. Siddiqui, supra, 243 Va. at 497, 416 S.E.2d at 450. A legal malpractice claim usually involves a "case-within-the-case," in which the plaintiff must present evidence that would have been presented in the underlying action. Whitley v. Chamouris, 265 Va. 9, 11, 574 S.E.2d 251, 252-53 (2003). Causation is initially a question of law for the court, and, "if the evidence is such that

9

reasonable minds could not differ as to the outcome, the issue . . . should be decided by the court, not the jury." <u>Hazel & Thomas v. Yavari</u>, 251 Va. 162, 166, 465 S.E.2d 812, 815 (1996).

If the alleged malpractice occurs in litigation or litigation-related matters, the client cannot establish causation if he would not have prevailed in the prior action even if competently represented. <u>See</u> Mallen & Smith, LEGAL MALPRACTICE § 33.11 (2011 Ed.). Thus, there must be sufficient evidence of causation to convince the fact-finder in the malpractice action that the plaintiff would have prevailed in the underlying case or proceeding absent the attorney's alleged negligence. <u>Id.</u> at 11, 574 S.E.2d at 252-53; <u>Campbell</u>, 244 Va. at 352, 421 S.E.2d at 436.

The undisputed facts in this case demonstrate that Plaintiff would not have prevailed in his OCAHO Case even if the Defendants had performed precisely as he alleges they should have performed. Specifically, Plaintiff contends he would have prevailed in the underlying matter if the Defendants had taken the following actions: (1) filed a motion to compel I-9 Forms and applications submitted to DCAB; (2) called or listed Jerry Wolsey (an investigator with the Missouri Department of Labor) and John Moran (DCAB's human resources director) as fact witnesses, and Michael Johnston (a former ICE Special Agent) as an expert witness; and/or (3) communicated with fact witnesses and/or appeared in person or requested a phone

conference during written depositions taken in the case. Plaintiff also claims that Defendants were negligent in "changing" his affidavit testimony and inaccurately summarizing the testimony of a witness in his response to DCAB's motion for summary decision, and that these acts also caused or contributed to his being unsuccessful in the OCAHO Proceeding. None of these allegations, however, have merit.

In this case, the Court has Judge Thomas's written Opinion and Order in the OCAHO Case. That Opinion and Order demonstrates that Plaintiff lost the OCAHO Case, because his claims failed to state a cause of action upon which relief could be granted under the IRCA. Judge Thomas' Opinion demonstrates that none of the specific instances of alleged attorney error identified by Plaintiff impacted the result in the OCAHO Case.  Inasmuch as Plaintiff had no viable claims in the OCAHO Case, the Defendants' alleged negligence in preparing and prosecuting that action did not, as a matter of law, cause Plaintiff to suffer any harm. See Campbell, 244 Va. at 352, 421 S.E.2d at 436.

Plaintiff's claims against DCAB for Discrimination in Hiring, Impact of Hiring Practices on Tips or Gratuities, Completion of Paperwork Requirements, and Retaliation all failed to state actionable causes of action under the IRCA. Plaintiff's Discrimination in Hiring claim failed as a matter of law because

11

Plaintiff could not establish the required elements of the cause of action. Furthermore, that claim was procedurally barred because Plaintiff failed to assert it within 180 days from the date he was hired in 2006, which was well before the date he retained Defendants to represent him.

Next, Judge Thomas found that Plaintiff could not prevail on his claim that "DCAB's having non-English speaking workers in the kitchen . . . had a negative impact on the tips he received from his customers." Judge Thomas found OCAHO cases are legion for the proposition that § 1324b does not encompass claims about the terms and conditions of employment. The statutory language is clear and unequivocal. Section 1324b prohibits an employer from discriminating with respect to the hiring, recruitment, referral, or discharge of an individual, but unlike Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the section does not speak at all to such employment issues as compensation, assignment, or other terms, conditions, or privileges of employment, so no prima facie case can be established under § 1324b respecting such terms and conditions of employment. Thus, Plaintiff likewise could not prevail on this cause of action.

Third, Judge Thomas found that Plaintiff could not prevail on his discrimination claim based on DCAB's alleged policy of assisting alleged "non-protected aliens" in the completion of employment

12

paperwork.  These allegations either failed to state a cause of action or were barred by the applicable limitations period.

Fourth, Judge Thomas concluded that Plaintiff failed to state a cause of action for retaliation under §1324b because he failed to identify some conduct on his part that was specifically protected by that section.

Judge Thomas held that Section 1324b(a)(5) is not a "catch-all" statute, but prohibits retaliation only when engaged "for the purpose of discouraging activity related to the filing of OSC charges or interfering with rights or privileges secured specifically under § 1324b."  Indeed, Plaintiff never complained about discrimination under § 1324b until well after he was fired, a finding amply supported by the evidence, including Plaintiff's own deposition testimony.  Thus, Judge Thomas held that Plaintiff could not prevail on his retaliation claim as a matter of law.

For the same reasons given in Judge Thomas's Final Decision and Order, Plaintiff cannot, as a matter of law, prove that "but-for" any alleged negligence on the part of the Defendants, he would have prevailed on his claims for Discrimination in Hiring, Impact of Hiring Practices on Tips or Gratuities, Completion of Paperwork Requirements, and Retaliation in the OCAHO Proceeding. As such, Defendants are entitled to judgment as a matter of law with on any malpractice allegations based on these claims.

13

Plaintiff alleges that the Defendants negligently failed to obtain certain discovery materials and information from DCAB (I-9 Employment Forms and Application for DCAB's kitchen workers) and failed to identify and proffer the anticipated testimony of three witnesses (John Moran, Jerry Wolsley and Mike Johnston) in the OCAHO Case.   Plaintiff asserts that the OCAHO Case result "might" have been different had this evidence and testimony been presented to Judge Thomas.

According to Judge Thomas's Final Decision and Order, the discovery/litigation errors or omissions of which the Plaintiff complains in this malpractice action have no bearing on the issues that were decided by Judge Thomas, and thus would not have affected her decision on that claim. In the OCAHO Proceedings, Plaintiff argued *inter alia* that he was discriminated against on the basis of his citizenship status because although both he and Victor Trejo were involved in an argument, but Plaintiff alone was terminated. Thus, Plaintiff claimed that this "disparate treatment" was evidence that he had been discriminated against on the basis of his citizenship status.

In her Final Decision and Order, Judge Thomas found that although the Plaintiff was able to meet the first three elements of a prima facie termination case (i.e., that he 1) belonged to a protected class, 2) was qualified for the position, and 3) was

14

discharged) he was unable to establish the fourth element: that the discharge occurred under circumstances giving rise to an inference of discrimination.  Specifically, Judge Thomas held that Shortt could not meet this burden by showing that a similarly situated individual, who is not a member of his protected group, was treated differently.  Because Shortt neither asserted nor established that Trejo was not an American citizen (i.e., the protected group), Shortt could not demonstrate that his discharge occurred under circumstances giving rise to an inference of discrimination.  Judge Thomas further pointed out that discrimination suits require some evidence of discrimination and held that "[b]ecause Shortt did not establish that Trejo's citizenship was different from his, and he pointed to no other evidence remotely suggesting that his own United States citizenship was a factor in his discharge, Shortt failed to show a prima facie case of citizenship status discrimination with respect to his termination." Judge Thomas also stated that even if the Plaintiff's contention that he and Trejo were "similarly situated" had satisfied the minimal showing required for a prima facie case, there was "no way it would have survived the more rigorous standard used at the pretext stage, which required that a comparator be similarly situated in all relevant respects.  Although both Shortt and Trejo participated in the altercation, there was no showing that Trejo had any disciplinary history during his tenure

15

as a server at DCAB, while Shortt had been disciplined for and warned about using obscene and vulgar language only a month before.

Plaintiff cannot demonstrate on this record that any of the discovery that he claims Defendants should have obtained would have in any way effected Judge Thomas's decision.

Moreover, if Plaintiff believed the OCAHO Case result was erroneous, he had the opportunity and the ability to appeal Judge Thomas's decision to the United States Court of Appeals for the Eighth Circuit. Plaintiff, by his own admission, missed that opportunity when, acting *pro se*, he failed to file the notice of appeal in a timely manner. Shortt v.Dick Clark's AB Theatre, LLC, No. 09-3442, 2010 WL 1740802, at *1 (May 3, 2010).) Plaintiff admits that the Defendants bear no responsibility whatsoever for his failure to timely file his appeal petition.

Plaintiff contends that the Defendants gave him negligent legal advice concerning other potential discrimination claims against DCAB, and, as a result, he lost the ability to pursue those claims. Specifically, Plainitff alleges that he had viable Title VII disparate treatment and retaliation claims against DCAB, which he was unable to pursue because the Defendants failed to correctly advise him regarding the need to file an EEOC charge in order to exhaust his administrative remedies.

As previously mentioned herein, the undisputed facts of record demonstrate that the Defendants were retained to pursue immigration-related discrimination claims on Plaintiff's behalf against DCAB, and Plaintiff has not presented any expert testimony that the Defendants owed him an affirmative duty to prosecute or advise him regarding other potential employment discrimination claims. In fact, the admissible evidence is to the contrary. Nevertheless, even assuming, *arguendo*, that a duty existed and was breached by the Defendants in this regard, Plaintiff's malpractice claim fails as a matter of law because Plaintiff had no meritorious Title VII employment discrimination claims against DCAB in the first instance.

Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. Ripplin Shoals Land Co. v. U.S. Army Corps of Eng'rs, 440 F.3d 1038, 1044 (8th Cir. 2006). See also Selcek v. Braswell Servs. Group, Inc., 134 F.3d 219. 224 (4th Cir. 1998). Preclusion by collateral estoppel is based upon the need to conserve judicial resources and prevent inconsistent decisions. See Simmons

17

v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996). Accordingly, where the plaintiff's subsequent claims are "simply the same claim[s] repackaged," it is appropriate for the court to preclude the plaintiff from re-litigating those claims. Robbins v. Clarke, 946 F.2d 1331, 1334 (8th Cir. 1991).

Any potential Title VII claims Plaintiff alleges he had would necessarily have arisen from the same core set of operative facts as his claims in the OCAHO administrative proceeding, and, thus, would merely have been immigration discrimination claims "repackaged" as Title VII claims. Plaintiff filed his OCAHO Complaint on June 15, 2008 alleging, among other things, that he was fired in retaliation for making complaints about DCAB's alleged wage practices and hiring and employing of illegal aliens—the same complaints he later made in his Missouri Lawsuit.  On August 21, 2009, Judge Thomas issued her Final Decision and Order against Plaintiff in that proceeding and concluded, among other things, that: "Matthew Short did not establish a prima facie case of retaliation under 8 U.S.C. § 1324b(a)(5)"; that "[DCAB] proffered a nondiscriminatory and non-retaliatory reason for terminating Matthew Shortt"; and that "Matthew Shortt failed to show that [DCAB's] reason for terminating him was a pretext for discrimination or retaliation."

Plaintiff's OCAHO Complaint resulted in final adjudication on the merits, that Plaintiff was a party to that adjudication and that he was given a full and fair opportunity to be heard. The issues that Plaintiff sought to litigate under Title VII are the same as those decided on the OCAHO Complaint.

Regardless of the statutory source of Plaintiff's employment discrimination claims , the claims arose from the same factual circumstances, involved the same parties, and were evaluated using the same analytical framework.  In any potential Title VII claim, Plaintiff bears the burden to produce evidence establishing a *prima facie* case of discrimination, and establishing that DCAB's proffered reasons for his dismissal were pretext for unlawful discrimination. These identical issues were presented and adjudicated in the OCAHO Case, and those facts were specifically and finally decided against Plaintiff on those issues.

The traditional burden shifting analysis in an employment discrimination case is that established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Plaintiff asserts that he had meritorious Title VII disparate treatment and retaliation claims against DCAB resulting from the termination of his employment. However, Judge Thomas used the McDonnell Douglas analytical framework to evaluate the merit of Plaintiff's OCAHO claim and found the undisputed facts of record establish that any potential Title

VII claim was doomed to failure based upon Plaintiff's inability to prove the all of the elements of his *prima facie* case or to prove that DCAB's legitimate, non-discriminatory reasons for the termination of Plaintiff's employment were pretext for discrimination.

Plaintiff argues that he was the victim of national origin discrimination because, although both he and Victor Trejo were involved in a heated argument that led to Plaintiff's termination, Trejo allegedly received no discipline for his participation in the incident.  Again, this allegation is merely a "repackaging" of the Plaintiff's claim of discrimination in connection with his termination, allegedly on the basis of his citizenship status. Under the IRCA or Title VII, the framework is the same.

When a plaintiff relies upon circumstantial evidence of discrimination, a court assesses a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e-2000e-17, race or national origin discharge claim using the burden-shifting framework of McDonnell Douglas, [411 U.S. 792, 802 (1973).] See Johnson v. AT & T Corp., 422 F.3d 756, 761 (8th Cir. 2005). The McDonnell Douglas factors for a *prima facie* case of disparate treatment are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff suffered an adverse employment action; (3) that at the time of the discrimination, the plaintiff was performing to his employer's

expectations; and (4) that other similarly-situated employees who are not members of the protected class were treated differently. McDonnell Douglas, 411 U.S. at 802 Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. If Plaintiff successfully establishes the four factors, the burden of production shifts to the employer to offer legitimate, non-discriminatory reasons for its actions.  If the employer does so, Plaintiff must then present evidence to prove that the employer's expressed reasons were pretext for unlawful discrimination.

As Judge Thomas determined, Plaintiff cannot establish that he and Mr. Trejo were similarly situated comparators for purposes of the disparate treatment analysis.  As set forth in detail above, Trejo did not have any disciplinary history during his tenure as a server at DCAB, while Shortt had been disciplined for and warned about using obscene and vulgar language only a month before he was terminated. Thus, at the time of the adverse employment action, Plaintiff had an established disciplinary history, based on his May 2007 suspension for similar conduct.  For this reason, he and Trejo were not similarly situated at the time Shortt was terminated.  Thus, Plaintiff's disparate treatment claim fails based on his inability to satisfy part four of his *prima facie* case.

Even assuming, however, that Plaintiff could establish a *prima facie* case of disparate treatment, DCAB had a legitimate,

non-discriminatory reason for firing Plaintiff. The second prong of the McDonnell Douglas test imposes only a burden of production upon the employer; it need not prove the credibility of its stated motivation, but must only produce reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). Thus, the employer is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case of discrimination or "fails to show that the employer's proffered legitimate, non-discriminatory reason is unworthy of belief." Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

DCAB fired Plaintiff for clear violations of company policy. Plaintiff admits he was suspended in May 2007, approximately six weeks before his altercation with Mr. Trejo. Plaintiff further admits participation in the incident with Mr. Trejo involving inappropriate behavior. Although there may be dispute regarding what occurred during the June 20, 2007 incident, it is not a genuine issue of material fact to survive summary judgment. Rather, Plaintiff cannot dispute he was suspended in May 2007, was involved in an incident approximately six weeks later, and was terminated after the second incident.

Moreover, Plaintiff has presented no admissible evidence to

demonstrate or even suggest that DCAB's legitimate,
non-discriminatory reasons for firing him were pretextual. To create
a factual issue as to pretext, Plaintiff must present sufficient
evidence to create an inference that the proffered reason has no basis
in fact, did not actually motivate DCAB, or was insufficient to
motivate the decision.

   Plaintiff also contends that he was fired in retaliation for
engaging in protected activity, i.e., complaining to the Missouri
Department of Labor about DCAB workers being paid less than minimum
wage, and complaining about his suspicion that DCAB hired
undocumented illegal workers.

   In the absence of direct evidence, the burden-shifting
framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.
Ct. 1817, 36 L. Ed. 2d 668 (1973), governs retaliation claims.

   Plaintiff cannot state a meritorious retaliation cause of
action because he cannot demonstrate that he was engaged in
"protected conduct" under Title VII. Protected conduct falls into
two distinct categories: participation or opposition.  See 42
U.S.C.A. § 2000e-3(a) (West 1994).  The statute provides in part that
"it shall be an unlawful employment practice for an employer to
discriminate against any of his employees . . . because [the employee]
has opposed any practice made an unlawful employment practice by this
[title] or because he has made a charge, testified, assisted or

participated in any manner in an investigation, proceeding, or hearing under this [title]." <u>See</u> 42 U.S.C. § 2000e-3(a). An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace.

The undisputed evidence demonstrates that Plaintiff at no time participated in any ongoing investigation or proceeding under Title VII.  Plaintiff admits that he did not file a formal charge or initiate any investigation concerning claims that DCAB was employing undocumented workers until <u>after </u>he was terminated.  Furthermore, complaining about the suspected immigration or citizenship status of other employees to an employer does not fall within Title VII's "opposition clause," which, by its terms, requires Plaintiff to have actually opposed employment practices made unless by Title VII. The opposition clause does not protect opposition to all allegedly unlawful employment practices or opposition to employment practices Plaintiff believes are unfair.  <u>See</u> <u>McNair v. Computer Data Systems Inc.</u>, 1999 U.S. App. LEXIS 1017, *15-16 (4th Cir. Jan. 26, 1999) (finding that complaint regarding "unfair" employment practice must include some indication that the unfair practice involves racial or sexual discrimination).

Even if Plaintiff could somehow make out a *prima facie* case of retaliation, DCAB clearly had legitimate, non-discriminatory reasons for terminating Plaintiff's employment. As noted above, these reasons included Plaintiff's repeated violations of company policy involving interactions with co-employees, the use of vulgar and racially inappropriate language, and threats of violence.

Additionally, Plaintiff's contention that his confrontation with Mr. Trejo is mere pretext for his allegedly retaliatory termination fails as a matter of law.  Plaintiff has admitted that he was suspended in May 2007, was involved in an incident the following month, and was terminated following the second incident. Mr. Trejo was not similarly situated with Plaintiff with regard to his employment history, as there is no evidence that Mr. Trejo had been previously suspended, or warned that a subsequent infraction would lead to his termination, or had been disciplined at any time. Plaintiff had been warned the month before regarding his unacceptable behavior and the subsequent potential consequences.  Thus, Plaintiff has failed to point to facts giving rise to a material dispute on this issue and, as a result, his retaliation claim fails as a matter of law, as does his malpractice claim against the Defendants.

For these reasons the Defendants' Motion For Summary Judgment should be granted and judgment entered for the Defendants.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
~~September      , 2011~~
Oct. 3, 2011

26